**STATE of Minnesota, Appellant,**

v.

**Damon Cortez RICHMOND, Respondent.**

No. C8–99–728.

Court of Appeals of Minnesota.

Nov. 23, 1999.

Review Denied Jan. 18, 2000.

648

Mike Hatch, Attorney General, St. Paul; and Amy Klobuchar, Hennepin County Attorney, Beverly J. Benson, Assistant County Attorney, Minneapolis, for appellant.

William E. McGee, Fourth District Public Defender, Peter W. Gorman, Assistant Public Defender, Minneapolis, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, RANDALL, Judge, and HALBROOKS, Judge.

## OPINION

RANDALL, Judge.

The district court granted respondent Damon Cortez Richmond's motion to sup-

press cocaine found in his pocket during a search. The state appeals this ruling and argues: (1) the district court erred when it found the search of Richmond's pocket exceeded the scope of a Terry frisk; and (2) there was probable cause to arrest Richmond and, consequently, the search was incident to arrest. We affirm.

## FACTS

Officer James Burns of the Minneapolis Police Department was on routine patrol on November 20, 1998. He and his partner observed a vehicle make an abrupt left turn from the right lane without signaling. The officers decided to initiate a stop for the driving violation. When Burns activated his red lights, he saw the driver lean toward the passenger compartment, which made Burns suspect that the driver was attempting to hide something. The driver sat back up, pulled over, and parked.

Burns approached the driver, later identified as Damon Cortez Richmond, and informed him he was stopped for a driving violation. Burns asked Richmond where he had come from and where he was going. Richmond did not seem to understand these questions and appeared nervous and fidgety. Burns again asked Richmond these questions but again did not get a response. When Burns asked for a driver's license, Richmond started reaching all over his body, jacket, and coat pockets. Because of what Burns saw earlier and because Richmond was not finding his driver's license, Burns became concerned for his safety. Burns requested that Richmond step out of the car.

Burns escorted Richmond back to the squad car, and Richmond eventually produced his driver's license. During his testimony, Burns explained that he commonly grabs a suspect from the back of the jacket, so that if a suspect were to run, he could pull the suspect down. Richmond was wearing a puffy down jacket. As soon as Burns grabbed Richmond's jacket, Richmond stuck his arms straight out in front of him, which Burns stated was un-

usual. Richmond began looking at Burns and Burns's partner, and Burns did not know whether Richmond was going to run. Burns instructed Richmond to put his hands on the squad car.

Burns began to do a pat search for weapons. Burns asked Richmond again where he was coming from and where he was going, and, at that point, Richmond took his hands off the squad car. Burns ordered Richmond to put his hands back on the squad car. Richmond started to reach for his outside left coat pocket. Burns's partner had to grab Richmond's arm and forcibly place it back on the squad car. Fearing that Richmond had a weapon in the pocket, Burns stuck his hand into the pocket and immediately recognized a large quantity of crack cocaine. Burns did not pat-search Richmond around his pockets before he reached into Burns's pocket. After Burns pulled out the drugs, he handcuffed Richmond and placed him under arrest.

Richmond denied that he made an illegal turn. He testified that he signaled the left turn and made the turn from the left-turn lane. Richmond testified that the officers pulled everything out of his pockets and threw everything on the trunk of the car. Richmond also testified that Burns found the cocaine in the inside pocket of his jacket, not in the outside pocket.

Richmond was charged with second-degree possession of a controlled substance pursuant to Minn.Stat. §§ 152.022, subds. 2(1), 3(a), 609.101, subd. 3 (1998). Based on the testimony, the district court granted Richmond's motion to suppress the cocaine found in his pocket.

## ISSUES

1. Did the district court clearly err when it concluded the officer exceeded the scope of a Terry frisk when he reached into respondent's pocket?

2. Was there probable cause to arrest respondent based on careless driving or obstructing legal process?

## ANALYSIS

 In a pre-trial appeal, this court will reverse the district court's determination only if the state demonstrates clearly and unequivocally that: (1) the district court erred in its judgment; and (2) unless reversed, the error will have a critical impact on the trial's outcome. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987). Even if this court would have ruled differently, we may not substitute our judgment for that of the district court. *State v. Aubid*, 591 N.W.2d 472, 478 (Minn.1999).

### I. The Search

 The Fourth Amendment to the United States Constitution and Article I of the Minnesota Constitution prohibit unreasonable searches and seizures of "persons, houses, papers and effects." U.S. Const. amend. IV; Minn. Const. art. I., § 10. Warrantless searches are per se unreasonable, subject only to a few narrow exceptions. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn.1992), *aff'd*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). Police may stop and frisk a person when: (1) they have a reasonable, articulable suspicion that the suspect might be engaged in criminal activity; and (2) they reasonably believe the suspect might be armed and dangerous. *Id.*; *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889 (1968). If both of these factors are present, police may conduct a limited search of the outer clothing of a suspect in an attempt to discover weapons that might be used to assault officers. *Dickerson*, 481 N.W.2d at 843; *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884–85.

 Appellant argues the district court erred when concluding that the seizure of the cocaine in Richmond's pocket exceeded the scope of a Terry frisk. Neither party disputes that the traffic stop was valid. *See State v. Battleson*, 567 N.W.2d 69, 70 (Minn.App.1997) (holding police officer may make investigatory stop of motor vehicle if officer has specific and articulable facts establishing reasonable suspicion of motor vehicle violation or criminal activity (citing *State v. Duesterhoeft*, 311 N.W.2d 866, 867 (Minn.1981))). Once an officer stops a vehicle, the officer may, for his safety, order the vehicle's occupants to exit the vehicle. *State v. Gilchrist*, 299 N.W.2d 913, 916 (Minn. 1980). When a police officer has a reasonable, articulable suspicion that a seized person is armed and dangerous, the officer may conduct a pat-down search of the person's outer clothing to determine whether that person is armed. *State v. Harris*, 590 N.W.2d 90, 104 (Minn.1999).

Before removing Richmond from his car, the officers observed: (1) Richmond made a "furtive movement" by reaching toward his car's passenger compartment; (2) Richmond was nervous and fidgety after he was stopped; and (3) Richmond was unable or unwilling to answer the officer's questions. After the officer asked him to locate his driver's license, Richmond began reaching all over his body, jacket, and coat pockets. Burns became concerned for his safety and ordered Richmond from the car. After removing Richmond from the car, Burns became more concerned because Richmond looked at the officers as though he was trying to decide whether to run.

 First, based on the totality of the circumstances and the facts, the district court did not err when it concluded that Burns had reasonable suspicion to perform a pat-down search for weapons. But then, on appeal, we are being asked by the State of Minnesota to reassess the credibility determination of the district court as to each witness, on findings the district court made with which the state does not agree. We decline to do so. The district court took oral testimony and assessed credibility.

 The district court found the search went too far. We agree. A protective pat search "must be strictly limited to that which is necessary for the discovery

of weapons which might be used to harm the officer or others nearby." *Dickerson*, 508 U.S. at 373, 113 S.Ct. at 2136 (quotation and citations omitted). If the protective search goes beyond what is necessary to determine whether the suspect is armed, it is not a valid Terry frisk and the fruits will be suppressed. *Id.* A valid Terry frisk consists "solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault." *Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968) (invalidating search where officer, with no attempt at initial limited exploration for weapons, thrust his hand into suspect's pocket and took out illegal drugs).

The state likens this case to *State v. Alesso*, 328 N.W.2d 685 (Minn.1982). In *Alesso*, an officer approached a car that was illegally parked. *Id.* at 686. Two men were in the car holding what the officer believed to be alcohol, and the officer observed an uncased hunting knife on the ledge in front of the steering wheel. *Id.* The driver was fidgety and nervous and acted as though he was trying to hide something. *Id.* The officer shined his flashlight on the driver's right hand and saw the driver move his hand toward his pocket, where the officer saw part of something he could not identify. *Id.* Quickly, the officer brushed away the suspect's hand and reached in to grab the object, which turned out to be cocaine. *Id.* at 686–87. The supreme court validated this search because of the suspect's furtive movement toward his pocket that caused the officer to act quickly because he believed the pocket contained a weapon. *Id.* at 688.

The district court distinguished *Alesso* on its facts because the "two officers had [Richmond] outside the vehicle and under control. [Richmond] did not pose an immediate danger to the officers." Unlike in *Alesso*, when Richmond reached for his pocket, one officer grabbed his hand and forcibly placed it back on the squad car. Once the danger that Richmond was reaching for a weapon was over, Burns was not justified in reaching into Richmond's pocket without first patting down his outer clothing. *See Harris*, 590 N.W.2d at 104 (concluding officer could not reach into inside jacket pocket without first patting down suspect's outer clothing even where suspect acted nervous and tried to hide his arm and officers noticed bulge in jacket sleeve).[1] Appellant has not shown that the district court made a clear and unequivocal error in suppressing the evidence.[2]

## II. Probable Cause

▉▉▉▉▉ The state argues that before searching Richmond's coat pocket, Burns had probable cause to arrest him for careless driving and/or obstructing legal process, making the search valid as incident to arrest.[3] A search incident to arrest can be performed before the actual arrest as long as the officer has probable cause to arrest a suspect. *In re Welfare of G. (NMN) M.*, 560 N.W.2d 687, 695 (Minn.1997). But evidence found as a result of the search cannot later be used to justify probable cause. *Id.* To arrest a suspect without a warrant, officers must be guided by their own experience and observations, and they

---

1. There is no evidence that Burns saw a bulge in the pocket of Richmond's bulky coat that may have led to the "inevitable discovery" of the cocaine, as the state argues. *See Harris*, 590 N.W.2d at 105 (explaining inevitable discovery exception where officer would have found illegal substance had he performed outer-clothing pat-down search).

2. As a result, we do not need to examine the critical-impact standard.

3. The state also argues that, alternatively, there was probable cause to search Richmond's coat pocket for a dangerous weapon or controlled substance. Unlike warrantless searches based on "probable cause to arrest," there is no caselaw that allows for a warrantless search of a person based on "probable cause to search."

must reasonably believe a crime was committed by the suspect. *State v. Olson*, 436 N.W.2d 92, 94 (Minn.1989), *aff'd*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Under Minn.Stat. § 629.34 (1998), a police officer may arrest a person without a warrant when a public offense, including a misdemeanor, has been committed or attempted in the officer's presence. Minn. Stat. § 629.34, subd. 1(c)(1); *Smith v. Hubbard*, 253 Minn. 215, 220, 91 N.W.2d 756, 761 (1958) (including misdemeanors in definition of public offense). Generally, law enforcement officers issue citations to people subject to lawful arrest for misdemeanors, unless it reasonably appears that: (1) arrest or detention is necessary to prevent bodily harm to the accused or another or to prevent further criminal conduct; or (2) there is a substantial likelihood that the accused will fail to respond to a citation. Minn. R.Crim. P. 6.01, subd. 1(1)(a).

The state first argues Richmond could have been arrested for careless driving. *See* Minn.Stat. § 169.13, subd. 2 (1998) (describing misdemeanor of careless driving). But there is no evidence arising from Richmond's alleged violation of a traffic law that: (1) an arrest was necessary to prevent bodily harm or further criminal conduct; or (2) there was a likelihood Richmond would fail to respond to the traffic citation.

The state also argues that Richmond obstructed legal process because he did not cooperate with officers when they asked him questions and searched him. *See* Minn.Stat. § 609.50, subd. 1(2) (1998) (describing offense of obstructing officer performing official duties). The record reflects: (1) Richmond did not answer the officer's questions; (2) did not immediately produce his driver's license; and (3) removed his hands from the squad car twice when directed to keep them on the car. But the district court determined that Richmond was "under control," and there was no evidence that Richmond needed to be arrested to prevent bodily harm to the

officers or that he was involved in any other criminal activity. There was also no credible evidence that Richmond would fail to respond to a citation on his traffic offense. Taking into account the discretion due district courts on credibility assessment of oral testimony, the district court did not unequivocally err when it declined to admit the evidence under this theory.

## DECISION

The district court did not unequivocally err when it suppressed the evidence of cocaine found in Richmond's pocket because the search exceeded the scope of a Terry frisk. Further, there was no probable cause to arrest Richmond based on the misdemeanors of careless driving or obstructing legal process.

**Affirmed.**