**STATE of Minnesota, Respondent,**

v.

**Charles William LEMERT, Appellant.**

**No. A12–0050.**

Supreme Court of Minnesota.

March 5, 2014.

Lori Swanson, Attorney General, Jennifer Coates, Assistant Attorney General, Saint Paul, MN, Michelle M. Zehnder Fischer, Nicollet County Attorney, Saint Peter, MN, for respondent.

Carson J. Heefner, Heefner Nelson Law, P.A., Saint Paul, MN, for appellant.

Cort C. Holten, Jeffrey D. Bores, Chestnut Cambronne PA, Minneapolis, MN, for amicus curiae Minnesota Police and Peace Officers Association Legal Defense Fund.

## OPINION

STRAS, Justice.

Appellant Charles William Lemert was convicted of a fifth-degree controlled-substance offense based on evidence that law-enforcement officers recovered from his pockets during a pat search. Prior to trial, Lemert moved to suppress the evidence, arguing that the search was unlawful because the officers lacked a reasonable, articulable suspicion that he might have been armed and dangerous. The district court denied Lemert's motion and the court of appeals affirmed. Because we conclude that, under the totality of the circumstances, the officers had a reasonable, articulable suspicion that Lemert might have been armed and dangerous, we affirm.

## I.

In January 2010, officers from the Nicollet County Sheriff's Office and the Minnesota River Valley Drug Task Force were investigating Thomas Anthony for suspected drug trafficking. The police suspected that Anthony was an established dealer of large quantities of methamphetamine in the St. Peter area.

To confirm their suspicions, the police arranged two controlled buys of methamphetamine from Anthony. Each time, Anthony sold a confidential informant roughly 7 grams of methamphetamine for $700. For the first purchase, which was completed on January 18, the confidential informant picked up the methamphetamine inside the garage at Anthony's apartment in St. Peter.

For the second purchase, which occurred on January 20, a confidential informant met Anthony at a prearranged location, got into Anthony's truck, and gave $700 to Anthony. Anthony told the informant to pick up the methamphetamine at a residence in Le Sueur County from someone named "Curt." The informant picked up the methamphetamine later that day in accordance with Anthony's instructions.

Also on January 20, the police applied for and obtained two search warrants, one for Anthony's apartment and another for his garage. As they prepared to execute the search warrants, the police placed Anthony's apartment under surveillance. Before the police could conduct the searches, however, Anthony left the apartment in his truck—the same truck in which he had met a confidential informant in connection with a methamphetamine sale earlier that day.

Once Anthony left his apartment, Agent Aaron Petersen and another agent followed Anthony. During the pursuit, an officer with the Nicollet County Sheriff's Office instructed one of the agents to stop Anthony and arrest him based on the controlled buy that had occurred earlier that day. Once he stopped Anthony's truck, Agent Petersen ordered Anthony to get out of the truck and lie face down on the ground, after which Agent Petersen searched Anthony, handcuffed him, and placed him in a police car.

When the agents stopped Anthony's truck, they discovered that Anthony had a passenger: Charles Lemert. The other agent ordered Lemert to get out of the truck and instructed him to stand facing the truck, at which point Agent Petersen approached Lemert and asked him his name. Lemert replied that his name was "Chuck," and at about the same time, Agent Petersen began to conduct a pat search of Lemert. During the pat search, Agent Petersen felt an object in Lemert's pocket that he recognized as a pipe for smoking drugs. Agent Petersen removed the pipe, saw that it appeared to contain drug residue, and informed Lemert that he was under arrest for drug possession. Agent Petersen also recovered three other glass devices for smoking drugs and a glass vial containing less than 1 gram of methamphetamine from Lemert's pockets.

As Agent Petersen conducted the pat search, Lemert had his hands on Anthony's truck, except that Agent Petersen's report indicated that Lemert moved his hands toward his waist during the pat search, which caused Agent Petersen to forcibly restrain Lemert and order him to place his hands back on the truck. At the suppression hearing, however, Agent Petersen testified that Lemert removed his hands from the truck only after the pat search had concluded and he had been told to do so. Agent Petersen also indicated that he was not aware of whether Lemert had a weapon or posed a danger to the officers. Instead, he searched Lemert based on a departmental policy that required him to conduct a pat search during a "felony stop."[1]

Based on the evidence discovered during the pat search, the State charged Lemert with a fifth-degree controlled-substance offense. See Minn.Stat. § .025, subd.(a)(1) (2012). Lemert moved to suppress the evidence, arguing that the search violated his rights under the Fourth Amendment to

---

1. Agent Petersen testified that not every stop for a felony offense is a "felony stop" that triggers the departmental policy of conducting a pat search of every vehicle occupant. It appears from the record that stops related to drug trafficking qualify as "felony stops" for purposes of the policy, but the record does not disclose what other types of stops qualify as "felony stops."

the United States Constitution and Article, Section, of the Minnesota Constitution. Following an evidentiary hearing, the district court denied Lemert's motion. The parties then agreed to a bench trial on stipulated facts, after which the court convicted Lemert of the fifth-degree controlled-substance offense, stayed imposition of Lemert's sentence, and imposed a five-year term of probation. The court of appeals affirmed. *State v. Lemert,* 829 N.W.2d 421 (Minn.App.2013). We granted Lemert's petition for review.

## II.

The sole question presented by this case is the legality of the pat search of Lemert conducted by Agent Petersen. The Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution forbid "unreasonable searches" by the government. U.S. Const. amend. IV; Minn. Const. art.I, § 10. Lemert does not argue that the Minnesota Constitution provides him with greater protection than the United States Constitution, so we confine our analysis to the requirements of the Fourth Amendment.

A warrantless search, such as the one at issue in this case, is generally unreasonable unless it falls within an exception to the Fourth Amendment's warrant requirement. *Missouri v. McNeely,* — U.S. —, —, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013) (noting that "a warrantless search of the person is reasonable only if it falls within a recognized exception" to the Fourth Amendment's warrant requirement). The Supreme Court of the United States recognized one such exception in *Terry v. Ohio,* in which it held that a law-enforcement officer may conduct a protective pat search of a person's outer clothing so long as the officer has a reasonable, articulable suspicion that

the person whom the officer has lawfully detained may be armed and dangerous. 392 U.S. 1, 26–27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The protective pat search "must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (quoting *Terry,* 392 U.S. at 26, 88 S.Ct. 1868). However, an officer is entitled to seize contraband, including drug paraphernalia, found during a pat search if the incriminating character of the contraband is immediately apparent to the officer such that it gives rise to probable cause for the seizure. *See id.* at 376, 378, 113 S.Ct. 2130.

A pat search must be lawful at its inception, which means that a reasonable, articulable suspicion must exist when the pat search begins. *Terry,* 392 U.S. at 21–22, 88 S.Ct. 1868 (holding that the justification for a search depends on "the facts available to the officer at the moment of the ... search"). We evaluate whether a reasonable, articulable suspicion exists from the perspective of a trained police officer, who may make "inferences and deductions that might well elude an untrained person." *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

The legality of a pat search depends on an objective examination of the totality of the circumstances. *See United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Thus, a pat search may still be lawful even if the officer conducted it based on departmental policy rather than the officer's subjective assessment of the circumstances. *See United States v. Tinnie,* 629 F.3d 749, 753 (7th Cir.2011); *see also Whren v. United States,* 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (ex-

plaining that, other than for inventory searches or administrative inspections, an "officer's motive" does not invalidate "objectively justifiable behavior under the Fourth Amendment"). After all, "[t]he actual, subjective beliefs of the officer are not the focus in evaluating reasonableness." *State v. Koppi,* 798 N.W.2d 358, 363 (Minn.2011).

In this case, the district court denied Lemert's suppression motion because, after considering the totality of the circumstances, it found that the officers had a reasonable, articulable suspicion that Lemert was armed and dangerous. The court of appeals affirmed the district court's decision, but adopted different reasoning. Rather than evaluate the totality of the circumstances, as the district court did, the court of appeals concluded that the pat search was legal "[b]ased on [Lemert's] presence in a vehicle stopped on suspicion that its driver had recently engaged in large-scale drug activity." *Lemert,* 829 N.W.2d at 422. The court of appeals thus adopted a variation of the automatic-companion rule, which permits law-enforcement officers to conduct a pat search of any person who is in the company of someone whom the officers have arrested. *See, e.g., United States v. Berryhill,* 445 F.2d 1189, 1193 (9th Cir.1971) (articulating the automatic-companion rule); *Owens v. Commonwealth,* 291 S.W.3d 704, 709–10 (Ky.2009) (describing the automatic-companion rule). The State does not defend the reasoning of the court

of appeals, and instead urges us to affirm the district court based on the totality of the circumstances surrounding the pat search.

■ This case was submitted to the district court on stipulated facts, and we review de novo whether the stipulated facts were sufficient to provide the officer with a reasonable, articulable suspicion to conduct a pat search of Lemert. *See State v. Diede,* 795 N.W.2d 836, 843 (Minn.2011). In a series of cases, the Supreme Court has explained that courts must evaluate whether reasonable, articulable suspicion exists under a totality-of-the circumstances approach. *See Arvizu,* 534 U.S. at 273, 122 S.Ct. 744; *United States v. Sokolow,* 490 U.S. 1, 7–8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *Cortez,* 449 U.S. at 417–18, 101 S.Ct. 690. In *Arvizu,* for example, the Court explained that "[w]hen discussing how reviewing courts should make reasonable-suspicion determinations, we have said repeatedly that they must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." 534 U.S. at 273, 122 S.Ct. 744 (quoting *Cortez,* 449 U.S. at 417, 101 S.Ct. 690). Applying those principles here, our task is to determine whether, under the totality of the circumstances at the inception of the pat search, the officers had a reasonable, articulable suspicion that Lemert might have been armed and dangerous.[2]

---

2. Because a search must be justified at its inception and we evaluate the legality of the search based on the collective knowledge of the officers, we rely only on facts that the officers knew at the inception of the pat search of Lemert in determining its legality. *See State v. Riley,* 568 N.W.2d 518, 523 (Minn. 1997) (applying the "collective knowledge" approach to determine the legality of an arrest). Accordingly, we disregard evidence that Lemert had received methamphetamine

from Anthony in the past because there is no evidence that, at the inception of the search, any of the officers knew that Anthony's passenger was Charles Lemert. We likewise disregard the fact that Lemert was wearing a leather case on his belt that could have contained a knife or other weapon because the record does not show that the officers observed the case prior to conducting the search or that any officer could have done so under the circumstances.

■ Based on the stipulated facts, we conclude that the officers had a reasonable, articulable suspicion that Lemert might have been armed and dangerous. In addition to the fact that Lemert was a passenger of a suspected drug dealer whom the officers had arrested, the officers knew other facts that supported the pat search. In particular, the officers knew details about Anthony's drug-trafficking activities that increased the likelihood that Lemert was either Anthony's customer or a fellow participant in those activities. First, the officers knew that Anthony was not a solo operator: earlier that same day, Anthony had directed a confidential informant to pick up methamphetamine from a third party named "Curt." Second, the officers knew that the truck in which Anthony and Lemert had been stopped was used, earlier that day, for a meeting between Anthony and a confidential informant about a methamphetamine sale. Third, a confidential informant had picked up methamphetamine at Anthony's garage just 2 days before the traffic stop, and the police knew that Anthony and Lemert had left Anthony's apartment together. Fourth, the police knew that Anthony was a dealer of felony-level quantities of methamphetamine.[3]

In addition to these facts, the totality of the circumstances includes any reasonable inferences that an officer could make in light of the facts, including that "a car passenger ... will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Wyoming v. Houghton*, 526 U.S. 295, 304–05, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Furthermore, as we have noted, a substantial nexus exists between drug dealing and violence. *State v. Craig*, 826 N.W.2d 789, 797 (Minn.2013); *see also United States v. Bustos–Torres*, 396 F.3d 935, 943 (8th Cir.2005) ("Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction."). Accordingly, under the totality of the circumstances, it was reasonable for the officers to suspect that Lemert may have been armed and dangerous and to conduct a pat search to ensure their safety. *Cf. State v. Brazil*, 269 N.W.2d 15, 20 (Minn.1978) (observing, in dictum, that the police could have lawfully conducted a pat search of a passenger when the police arrested the driver for selling drugs).

■ In affirming the district court's decision, however, we decline to adopt the automatic-companion rule. In the Fourth Amendment context, the Supreme Court has "consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry." *Ohio v. Robinette*, 519 U.S. 33, 39, 117

---

3. The details in the record about Anthony's drug-trafficking activities distinguish this case from *Diede*, 795 N.W.2d 836, in which we held that the police unlawfully seized the driver of a truck when they stopped the truck for a license-plate violation. During the stop, the police arrested the driver's passenger for previous drug sales, and then investigated the driver for drug-related criminal activity. *Id.* at–44. Unlike the record in this case, however, the record in *Diede* included no evidence about the nature of the arrestee's drug-trafficking activities and no evidence linking those activities to the vehicle that the police stopped. *Id.* at("The only basis in the record for suspecting that *anyone* possessed drugs was [a police officer's] assertion that he had probable cause to arrest [the passenger] for previous drug sales. But the record does not describe the foundation of that probable cause. Nor does it indicate any objectively articulable facts that would have allowed the police to reasonably infer that [the passenger] was carrying drugs at the time of his arrest....").

S.Ct. 417, 136 L.Ed.2d 347 (1996). Most recently, the Supreme Court rejected a categorical rule permitting warrantless blood testing in drunk-driving cases and instead held that "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." *Missouri v. McNeely,* —— U.S. at ——, 133 S.Ct. at 1563. The clear import of these decisions is that, although being a companion to an arrestee is part of the totality of the circumstances, the Fourth Amendment does not provide for an *automatic* search of an arrestee's companion. *Cf. Chimel v. California,* 395 U.S. 752, 767–68, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (holding that the arrest of a person in a residence does not give the police an automatic right to search the rest of the house without a warrant). Any other conclusion would be inconsistent with the fact-specific nature of the reasonableness inquiry. *See McNeely,* —— U.S. at ——, 133 S.Ct. at 1559.

### III.

For the foregoing reasons, we conclude that the district court did not err when it denied Lemert's motion to suppress the evidence recovered during the pat search. Accordingly, although we decline to adopt the reasoning of the court of appeals, we affirm.

Affirmed.