*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1201**

David Joseph Masters, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 21, 2014
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CV-11-20396

Derek A. Patrin, Ethan P. Meaney, Meaney & Patrin, P.A., Maple Grove, Minnesota (for appellant)

Lori Swanson, Attorney General, James E. Haase, Joan M. Eichhorst, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Ross, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

In this appeal from the district court's order sustaining revocation of appellant's driver's license under Minnesota's implied consent law, appellant challenges the

admissibility of the Intoxilyzer breath test report and further argues that the warrantless breath test was unconstitutional. We affirm.

## FACTS

On October 2, 2011, at 2:10 a.m., a police officer with the West Hennepin Public Safety Department received a dispatch call regarding a driving complaint. The officer responded to the dispatch call and stopped a vehicle driven by appellant David Joseph Masters. Upon approaching the vehicle, the officer saw signs that appellant had been consuming alcohol. The officer conducted a series of field sobriety tests and administered a preliminary breath test, which indicated an alcohol concentration of .112. The officer placed appellant under arrest for suspicion of driving under the influence and transported him to the West Hennepin Public Safety police department.

The officer read appellant the Minnesota implied-consent advisory and offered appellant the opportunity to consult with an attorney. Appellant indicated that he wished to consult with an attorney and the officer made a telephone available to him from 3:10 a.m. to 3:30 a.m. Appellant then agreed to submit a sample of his breath for testing. The officer was trained to operate the Intoxilyzer breath testing instrument and had been certified to use the equipment for approximately 16 years. The officer instructed appellant to take a deep breath, make a tight seal on the tube, and blow hard. The officer observed that appellant did not follow these directions. Specifically, appellant started and stopped blowing into the Intoxilyzer breathing tube many times but apparently had no difficulty breathing. Appellant made 18 attempts before the instrument accepted his first breath sample and registered an alcohol concentration of .079. During the second

2

attempt, appellant began coughing and blew into the breathing tube 33 separate times, none of which produced an adequate sample. The Intoxilyzer machine timed out after four minutes. Appellant did not provide an adequate volume of air for the Intoxilyzer to accept the second test. The instrument reported a deficient second sample and the officer concluded that appellant refused the test.

As of October 9, 2011, the commissioner revoked appellant's driving privileges as a result of his refusal and impounded his license plates. Appellant sought rescission of the revocation of his driving privileges and challenged the constitutionality of the test. After conducting the implied consent hearing the district court issued an order sustaining revocation of appellant's driving privileges and license plate impoundment. This appeal followed.

**D E C I S I O N**

**I.**

Findings of fact will not be reversed unless clearly erroneous and "[d]ue regard is given the district court's opportunity to judge the credibility of witnesses." *Snyder v. Comm'r of Pub. Safety*, 744 N.W.2d 19, 22 (Minn. App. 2008). Conclusions of law will be overturned only upon a determination that the trial court has erroneously construed and applied the law to the facts of the case. *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App. 1986). "Rulings on evidentiary matters rest within the sound discretion of the district court and will not be reversed on appeal absent a clear abuse of discretion." *In re Source Code Evidentiary Hearings*, 816 N.W.2d 525, 537 (Minn. 2012).

3

At the March 29, 2013 hearing, the district court heard testimony from the arresting officer and received into evidence the booking and testing audio and video without objection. The district court also provisionally received the Intoxilyzer breath test results "not to conclusively establish that there was a willful refusal, but to be considered with other evidence to determine" whether appellant provided a deficient sample. Appellant objected to the introduction of the Intoxilyzer test results on the grounds that the state failed to lay an adequate foundation for the test record.

When a breath test is offered as evidence, "the test must consist of analyses in the following sequence: one adequate breath-sample analysis, one control analysis, and a second, adequate breath-sample analysis." *In re Source Code*, 816 N.W.2d at 542 (quoting Minn. Stat. § 169A.51, subd. 5(a) (2010)). For a sample to be adequate, the individual taking the test must

> (1) start blowing at 0.17 liters per second, (2) maintain a breath rate of at least 0.15 liters per second, (3) maintain that rate for at least two seconds, (4) blow a minimum volume of air of at least 1.1 liters, and (5) attain a fairly level slope that is rising at a rate of less than seven percent.

*Id*. Failure to provide "two separate, adequate breath samples in the proper sequence constitutes a refusal." *Id*. (quoting Minn. Stat. § 169A.51, subd. 5(c) (2010)). In an implied consent hearing,

> the results of a breath test, when performed by a person who has been fully trained in the use of an infrared or other approved breath-testing instrument, as defined in section 169A.03, subdivision 11, pursuant to training given or approved by the commissioner of public safety or the commissioner's acting agent, are admissible in evidence without antecedent expert testimony that an infrared or other

> approved breath-testing instrument provides a trustworthy
> and reliable measure of the alcohol in the breath.

Minn. Stat. § 634.16 (2012).

Here, the district court found that the test was administered by "a certified Intoxilyzer operator" and that the officer's testimony was "credible" regarding appellant's unwillingness to provide two adequate breath samples. The Intoxilyzer breath test results showed that appellant provided 18 breath attempts during the first test and 33 attempts during the second test. The first breath sample was accepted as sufficient with a reported value of .079 and a replicate value of .080. The second breath sample was deficient. With respect to the second test, the district court noted that appellant's coughing "appeared feigned because it became frequent only when he was trying to justify his failure to provide a sample." The district court determined that appellant's breath sample was deficient due to his "willful failure to provide two adequate samples and not a software failsafe, physical inability or some other reason." The order concluded that, by failing to provide two adequate samples, appellant was deemed to have refused the test.

Appellant argues that the district court abused its discretion by considering the Intoxilyzer test records without first requiring the state to establish an adequate foundation for the test record. Appellant relies on *In re Source Code* for the proposition that an Intoxilyzer test record indicating a deficient sample is unreliable and inadmissible unless the state provides scientific evidence demonstrating that the deficient sample was not the result of a source code error. 816 N.W.2d at 543. Appellant's reliance on *In re*

5

*Source Code* is misplaced. As an initial matter, the fact pattern in this case is readily distinguishable. *In re Source Code* addressed the issue of a breath sample that could be erroneously labeled deficient if a person was blowing "exorbitantly hard," *id*. at 534, whereas appellant in this case produced short, choppy breaths and was unable to provide an adequate volume of air.

Moreover, the Minnesota Supreme Court recognized that a district court properly admits a deficient-sample Intoxilyzer breath report if there is "other evidence *or* observations that demonstrate the deficient sample was not the result of a source code error." *Id.* at 543 (allowing state to establish that "deficient sample" is not due to software failsafe by presenting "additional evidence," including specifically "an officer's observation" regarding person's conduct) (emphasis added). We generally read the use of the word "or" when connecting a series of clauses to be disjunctive. *Gassler v. State*, 787 N.W.2d 575, 585 (Minn. 2010). *In re Source Code* explicitly stated that a district court could properly rely on "additional evidence or observations that demonstrated that the reported 'deficient sample' was not the result of the software failsafe." 816 N.W.2d at 543. The district court credited the police officer's testimony that appellant was a noncompliant test subject, reviewed the video and audio tapes as well as the Intoxilyzer report, and ultimately concluded that the failure to provide an adequate second sample "was due to [appellant's] unwillingness to comply with instructions rather than physical inability or a testing device error." These findings are factually supported and are not clearly erroneous. We therefore see no abuse of discretion in the trial court's decision that appellant failed to provide two adequate breath samples.

**II.**

Appellant challenges the constitutionality of the warrantless chemical test. Both the Fourth Amendment to the United States Constitution and Article I, Section 10 of the Minnesota Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A breath test is a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989). Nevertheless, a warrantless search is valid "if the subject of the search consents." *Id.* In order for the exception to apply, "the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Id.* Whether consent is voluntary must be determined on a case-by-case basis, examining the totality of the circumstances. *State v. Lemert*, 843 N.W.2d 227, 233 (Minn. 2014) (quoting *Missouri v. McNeely*, 133 S. Ct. 1552, 1536 (2013)). This analysis includes "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'" *Brooks*, 838 N.W.2d at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)).

During oral argument, appellant acknowledged that his consent argument preceded *Brooks*. Moreover, the record supports the district court's finding that appellant's consent to the breath test was not coerced. The officer administered field sobriety tests and a preliminary breath test to appellant. Based upon the results, the officer placed appellant under arrest for suspicion of driving under the influence. The officer drove appellant to the police department and read the implied consent advisory. The wording of the advisory is compelled by statute as set forth in Minnesota Statutes section 169A.51, subdivision 2 (2012). Under Minnesota's implied consent law, anyone

who drives a motor vehicle in the state consents "to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol" when certain conditions are met. Minn. Stat. § 169A.51, subd. 1(a) (2012); *Brooks*, 838 N.W.2d at 569. A police officer can require someone to submit to a test when the officer "has probable cause to believe the person committed the offense of driving while impaired and the person has been lawfully arrested for driving while impaired." *Brooks*, 838 N.W.2d at 569. As part of the advisory, appellant was told both that "Minnesota law requires him to take a test" and "that refusal to take a test is a crime." Minn. Stat. § 169A.51, subd. 2(1), (2) (2012). Appellant asked to speak with an attorney and a telephone was made available to him for a period of 20 minutes. Appellant agreed to submit a sample of his breath for testing. Given the totality of the circumstances, as outlined in *Brooks*, appellant's agreement to submit to a breath test was freely and voluntarily given. The district court did not err in sustaining the revocation of appellant's driving privileges and the impoundment of his license plates.

**Affirmed**.