*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0713**

State of Minnesota,
Respondent,

vs.

Jacob Daniel Hughes,
Appellant.

**Filed December 22, 2014
Affirmed
Hooten, Judge**

Otter Tail County District Court
File No. 56-CR-13-696

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Michelle M. Eldien, Assistant County Attorney, Fergus Falls, Minnesota (for respondent)

Deven L. Nice, Nice Law Office, Fergus Falls, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Smith, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from his conviction of fifth-degree possession of a controlled substance, appellant contends that the district court erred in denying his motion to suppress evidence because the law enforcement officer unlawfully pat-searched him without a reasonable suspicion that he was armed and dangerous. We affirm.

## FACTS

On March 21, 2013, Fergus Falls Police Sergeant Andrew Miller was on duty in a marked squad car. While stopped at a stop sign in Fergus Falls, the sergeant observed a red Dodge Neon turn left and nearly collide with another vehicle. The other vehicle had the right of way. Upon witnessing the near collision, the sergeant immediately conducted a traffic stop of the Dodge Neon.

While the sergeant was still in his squad car, he observed the front-seat passenger, later identified as appellant Jacob Daniel Hughes, "make furtive movements." Specifically, it "appeared that Hughes was placing something in his jacket" because "his hands and arms were going towards his midsection where pockets to a jacket normally would be." Upon observing these movements, the sergeant's "awareness level was elevated" because he was concerned that Hughes might be trying to conceal a weapon. The sergeant approached the driver and asked him for identification. He noticed the driver's eyes were bloodshot and watery, and he noticed a backseat passenger. The sergeant then "returned to [his] squad and requested backup due to the furtive movements [he] witnessed."

2

Once backup arrived, the sergeant approached Hughes and asked him to exit the vehicle. He told Hughes about the furtive movements he observed and about his safety concerns, and Hughes explained that he was trying to find a cigarette when he reached into his jacket. The sergeant conducted a pat-search of Hughes. While he "patted down his right back pants pocket," he heard "plastic crumpling and felt objects consistent with pills." Based on his training and experience as a police officer, he believed these items were illegal contraband. He asked Hughes what was in his pants pocket, and Hughes replied it was cigarette-pack cellophane. The sergeant removed the items and observed two white oval pills inside the cigarette-pack cellophane. He verified that these pills were hydrocodone, a controlled substance, and then arrested Hughes.

Hughes was transported to the Otter Tail County detention facility. He was advised of his *Miranda* rights and interviewed by the sergeant and other officers. Hughes admitted that he knew the pills were hydrocodone and stated that he struggles with addiction to narcotics. He also stated that the furtive movements the sergeant observed were him putting on his seatbelt.

The state charged Hughes with fifth-degree possession of a controlled substance in violation of Minn. Stat. § 152.025, subd. 2 (2012). Hughes moved to suppress the evidence obtained against him, arguing that both the physical and testamentary evidence were the fruits of an unlawful search. In denying the motion to suppress, the district court concluded that the sergeant "had an objective and reasonable basis for suspecting [Hughes] might possess a weapon[, which] raised a reasonable concern for [the sergeant's] own safety."

3

After waiving his right to a jury trial and his other trial rights, Hughes stipulated to the prosecutor's evidence under Minn. R. Crim. P. 26.01, subd. 4, and agreed that because the district court's pretrial ruling was dispositive, a trial of the charge was unnecessary. The district court found Hughes guilty of fifth-degree possession of a controlled substance. Hughes was sentenced to 30 days in jail and five years of supervised probation. This appeal followed.

## D E C I S I O N

Hughes argues that the district court erred in denying his motion to suppress. "When reviewing pretrial orders on motions to suppress evidence, we review the facts to determine whether, as a matter of law, the [district] court erred when it failed to suppress the evidence." *State v. Flowers*, 734 N.W.2d 239, 247 (Minn. 2007). "When the facts are not in dispute, our review is de novo, and we must determine whether the police articulated an adequate basis for the search or seizure at issue." *Id.* at 248.

Both the Fourth Amendment of the United States Constitution and article I, section 10, of the Minnesota Constitution guarantee "[t]he right of the people to be secure" against "unreasonable searches and seizures." A warrantless search is unreasonable unless it falls under a recognized exception to the warrant requirement. *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014). "The Supreme Court of the United States recognized one such exception in *Terry v. Ohio*, in which it held that a law-enforcement officer may conduct a protective pat search of a person's outer clothing so long as the officer has a reasonable, articulable suspicion that the person whom the

4

officer has lawfully detained may be armed and dangerous." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 26–27, 88 S. Ct. 1868, 1882–83 (1968)).

"Reasonable suspicion must be based on specific, articulable facts that" demonstrate that the officer has "a particularized and objective basis for suspecting" that a person is armed and dangerous. *See State v. Diede*, 795 N.W.2d 836, 842–43 (Minn. 2011) (quotations omitted). "The reasonable-suspicion standard is not high," but it "requires at least a minimal level of objective justification . . . ." *Id.* at 843 (quotations and citation omitted). "The officer need not be absolutely certain that the individual is armed"; rather, the issue is whether a reasonably prudent officer in the same circumstances would be justified in believing that his safety was in jeopardy. *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. Courts "are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye." *State v. Britton*, 604 N.W.2d 84, 88–89 (Minn. 2000). A court must "consider the totality of the circumstances when determining whether reasonable, articulable suspicion exist[ed]." *Flowers*, 734 N.W.2d at 251. "Evidence obtained as a result of a [search or] seizure without reasonable suspicion must be suppressed." *See Diede*, 795 N.W.2d at 842.

On appeal, Hughes does not challenge the district court's determination that the traffic stop in this case was valid. He seems to argue, however, that the sergeant was not justified in seizing *him* because the sergeant had no independent reasonable "belief that [he] might be engaged in criminal activity." He points out that "[t]he stop in the case at

bar was based upon the [driver's] conduct," not his own conduct. This argument is clearly foreclosed by U.S. Supreme Court precedent:

> For the duration of a traffic stop, . . . a police officer effectively seizes everyone in the vehicle, the driver and all passengers. Accordingly, we hold that, in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation. The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver or a passenger during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.

*Arizona v. Johnson*, 555 U.S. 323, 327, 129 S. Ct. 781, 784 (2009) (quotation and citation omitted).

Hughes argues that the district court erred in concluding that the sergeant had a reasonable, articulable suspicion that he might be armed and dangerous.[1] The district court concluded that the sergeant had a reasonable suspicion based on Hughes's furtive movements, "which appeared to the [sergeant] as [Hughes] placing and/or concealing something in his jacket." The district court added that the sergeant's officer-safety concern "was supported by his request for backup before proceeding to search" Hughes,

---

[1] In his brief in support of his motion to suppress, Hughes also argued that the pat-search unlawfully exceeded the scope of a protective weapons search. However, Hughes does not raise or brief this issue on appeal, and therefore he has waived it. *See State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997), *review denied* (Minn. Aug. 5, 1997) ("Where a defendant asserts error, but fails to address the error in his appellate brief, the issue is deemed waived."); *cf. Scruggs v. State*, 484 N.W.2d 21, 24 n.1 (Minn. 1992) ("Appellant's brief does not address the first three claims, so these claims are deemed waived.").

and also noted that the sergeant conveyed his concern to Hughes before initiating the pat-search.

Hughes claims that furtive movements alone are not enough to establish a reasonable, articulable suspicion that a person is armed and dangerous. In support of this argument, Hughes cites cases where additional circumstances were present to support a finding of a reasonable suspicion. *E.g.*, *State v. Richmond*, 602 N.W.2d 647, 651 (Minn. App. 1999), *review denied* (Minn. Jan. 18, 2000) (concluding that the officer had a reasonable suspicion that defendant was armed and dangerous where defendant made a furtive movement, was nervous and fidgety, was unwilling or unable to answer the officer's questions, and reached all over his body and into his coat pockets to find his driver's license). In the alternative, Hughes claims that even if furtive movements alone can sometimes establish a reasonable suspicion, his own movements were not significant enough to give rise to a reasonable suspicion.

Hughes does not cite any Minnesota case holding that furtive movements alone are insufficient to give rise to a reasonable, articulable suspicion that a person is armed and dangerous, and we have found none. In *Flowers*, the supreme court concluded that officers had a reasonable suspicion that the defendant was armed and dangerous where the defendant failed to immediately stop his vehicle once a traffic stop was initiated and made several furtive movements. 734 N.W.2d at 252. The supreme court suggested that furtive movements alone can be sufficient to create a reasonable suspicion. *See id.* ("[Defendant's] movements in the vehicle, which lasted for approximately 45 seconds, gave the officers a reasonable suspicion that [defendant] . . . might have been armed and

7

dangerous. Here, [defendant's] movements in the vehicle gave the officers more than an 'inchoate and unparticularized suspicion or 'hunch.'" (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. at 1868)). Moreover, the supreme court in *Flowers* approvingly cited a Fifth Circuit Court of Appeals case that held that furtive movements alone can establish a reasonable suspicion that a suspect is armed and dangerous. *Id.* at 252 n.13 (citing *United States v. Colin*, 928 F.2d 676, 678 (5th Cir. 1991) ("That a person is stooping down and moving from side to side in the front seat of an automobile may form the basis of [a] reasonable belief [that a person is armed and dangerous]." (quotation omitted))).

Based on the totality of the circumstances, *Flowers*, 734 N.W.2d at 251, we conclude that the sergeant had a reasonable, articulable suspicion that Hughes was armed and dangerous when he initiated the pat-search. After initiating the traffic stop, the sergeant observed his "hands and arms going towards his midsection where pockets to a jacket normally would be." Based on his training and experience, the sergeant was concerned that Hughes might be trying to conceal a weapon. "[B]y virtue of the special training they receive, police officers articulating a reasonable suspicion may make inferences and deductions that might well elude an untrained person." *Id.* at 251–52. While these furtive movements were less pronounced than those of the defendant in *Flowers*, they were consistent with hiding a weapon. In addition to the furtive movements, the sergeant observed that the driver's eyes were bloodshot and watery, which suggested drug activity. Finally, the sergeant observed multiple people in the stopped vehicle, and "officer safety concerns increase when there is a passenger in a stopped vehicle[,] as both the passenger and the driver may have similar motivations to

8

prevent the discovery of crime in the vehicle by use of violence." *State v. Ortega*, 770 N.W.2d 145, 152 (Minn. 2009). The United States Supreme Court has stated that "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, [and] roadside encounters between police and suspects are especially hazardous." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3480–81 (1983).

In light of all the circumstances, the sergeant had a reasonable, articulable suspicion that Hughes was armed and dangerous, which justified the pat-search.[2] The district court did not err in denying the motion to suppress.

**Affirmed.**

---

[2] Hughes also argues that if the sergeant actually had a reasonable suspicion that Hughes was armed and dangerous, he would have called for backup right away, rather than first making contact with the driver and then calling for backup. We agree with the district court that the sergeant's concern that Hughes might be armed and dangerous "was supported by his request for backup before proceeding to search" Hughes.