*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1731**

State of Minnesota,
Respondent,

vs.

Richard Joseph Wollenberg,
Appellant.

**Filed September 14, 2015
Affirmed
Peterson, Judge**

Ramsey County District Court
File No. 62-CR-14-1593

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Stauber, Presiding Judge; Peterson, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**PETERSON**, Judge

In this appeal from his conviction of possession of a firearm by an ineligible person, appellant argues that the district court erred by refusing to suppress evidence seized during a pat-down search. We affirm.

**FACTS**

On March 5, 2014, Maplewood Police Officer Katherine Lynch was working alone on patrol when she received a call from police dispatch. Staff at the Maplewood Menards store had reported that "they saw an individual in a vehicle shooting up," which Lynch interpreted as meaning "injecting narcotics using a syringe." According to dispatch, "[t]here were two other individuals in the vehicle; one who had been suspected of shoplifting from the store." The three individuals were reportedly sitting inside "a red, broken down Chevy Blazer" "[t]hat . . . had a broken or flat tire." The Blazer was parked "in the back of the parking lot." The suspected shoplifter was a female.

Lynch went to the store and "saw a broken down red Chevy Blazer" in the back of the parking lot. As Lynch approached the Blazer, appellant Richard Joseph Wollenberg got out of the front passenger seat and started walking toward her. As Lynch parked and left her vehicle, Wollenberg told her "that he needed help." Lynch responded by asking Wollenberg to come and talk to her. She then told him that she was going to "check him for weapons and asked him to put his hands behind his back"; he complied.

Lynch testified that she decided to conduct a pat search because she "was concerned for my safety. . . . I didn't know if he was – if he had any needles on him

2

based upon the nature of the complaint. You know, a lot of times where there is drugs there could be weapons." Lynch also testified that she thought it "unusual" that Wollenberg approached her because "I generally don't have people exit their vehicle in the middle of winter to come and talk to me."

Before conducting the pat search, Lynch asked Wollenberg "if he had any needles on him," and he said that he did, in his upper left jacket pocket. Lynch asked about needles because she "didn't want them to be used against me in any way" and she did not want to "poke my hand on them" during the search.

While searching the left side of Wollenberg's upper body, Lynch felt the outline of a handgun. Lynch handcuffed Wollenberg and completed the search along with other officers who arrived at the scene. They retrieved a handgun, two loaded handgun magazines, and a syringe.

Wollenberg was charged with possession of a firearm by an ineligible person. Following an omnibus hearing at which Lynch testified, the district court denied Wollenberg's motion to suppress the evidence obtained during the search. Wollenberg then agreed to proceed under Minn. R. Civ. P. 26.01, subd. 4. The district court found him guilty and imposed the mandatory 60-month sentence. This appeal followed.

**DECISION**

When reviewing a district court's decision on a pretrial motion to suppress evidence, this court independently reviews the facts to determine whether, as a matter of law, the district court erred by not suppressing the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). An appellate court "review[s] the district court's factual findings

3

under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted).

The United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "Warrantless searches are per se unreasonable . . . subject only to a few specifically established and well delineated exceptions"; one valid exception is a pat-down search for weapons. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (quotation omitted), *aff'd, Minn. v. Dickerson*, 508 U.S. 36, 113 S. Ct. 2130 (1993). A police officer may stop an individual and conduct a pat-down search if the officer has "a reasonable, articulable suspicion that a suspect might be engaged in criminal activity" and if "the officer reasonably believes the suspect might be armed and dangerous." *Id; see Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884-85 (1968). "The legality of a pat search depends on an objective examination of the totality of the circumstances." *State v. Lemert*, 843 N.W.2d 227, 230 (Minn. 2014).

*Reasonable suspicion of criminal activity*.

Several facts supported Lynch's suspicion that appellant might be involved in criminal activity. Staff at Menards told police that a female in a vehicle had been shoplifting in the store, and that a passenger in the vehicle was "shooting up," which Lynch interpreted to mean "injecting narcotics using a syringe." This information suggested felony-level conduct. Lynch corroborated the location and description of the vehicle and its occupants at the Menards store before approaching the vehicle. As Lynch approached the vehicle, appellant left the vehicle and approached Lynch's squad car.

4

These circumstances, taken together, demonstrate that Lynch had a reasonable, articulable suspicion that appellant was involved in criminal activity.

*Reasonable belief that suspect might be armed and dangerous*

Appellant argues that Lynch did not have a reasonable basis to believe that he might be armed and dangerous. Lynch gave two reasons for deciding to conduct the pat search: she testified that she "didn't know . . . if [appellant] had any needles on him based upon the nature of the complaint," and, based on the reported use of narcotics in the car, she believed "there could be weapons." Lynch stated that her concern with appellant having needles was that she did not "want them to be used against me in any way" or to "poke my hand on them."

In *State v. Krenik*, this court ruled that "[t]he scope of a pat search extends to all concealed objects which might be used as instruments of assault." 774 N.W.2d 178, 185 (Minn. App. 2009) (quotation omitted), *review denied* (Minn. Jan. 27, 2010). The Superior Court of Pennsylvania considered the potential for using a needle as a weapon:

> The design of a syringe and needle allows for their employment as an easily concealed and potent weapon which can inflict a serious wound. Add to that threat the prospect of contracting hepatitis or HIV from an intravenous drug user's needle, and a needle's capacity to deliver grievous or even deadly injury should not be discounted. It is, therefore, reasonable to subject a suspected intravenous drug user properly detained at an investigatory stop to a limited pat down for needle possession to promote the officer's safety.

*Commonwealth v. Kondash*, 808 A.2d 942, 948 (Penn. Super. Ct. 2002). We agree with this analysis.

5

Furthermore, before conducting the search, Lynch asked appellant if he had any needles, and appellant replied that he did. It was reasonable for Lynch to ask this question to protect her safety because a controlled substance had purportedly been injected by one of the vehicle occupants, and Lynch was at risk of being pricked by a needle during a pat search. This court has held that a "reasonable basis" for placing someone in the back of a squad car "means either a reasonable suspicion that the person is armed and dangerous or the existence of other circumstances that pose a threat to the officer." *In re Welfare of M.D.B.*, 601 N.W.2d 214, 217 (Minn. App. 1999), *review denied* (Minn. Jan. 18, 2000). Both the risk of a needle being used as a weapon and the risk of being inadvertently pricked by a needle posed a threat to Lynch.

Appellant argues that the pat search was not based on a "particularized suspicion" that he was the person engaged in drug use. *State v. Ingram*, 570 N.W.2d 173, 176 (Minn. App. 1997), *review denied* (Minn. Dec. 22, 1997). "Reasonable suspicion must be particularized and based on specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *State v. Smith*, 814 N.W.2d 346, 352 (Minn. 2012) (quotation omitted).

Menards employees reported seeing an individual in a vehicle shooting up, and there was also a suspected shoplifter in the vehicle. When Lynch arrived, she saw appellant get out of the reported vehicle. In *Lemert*, the supreme court found the rule authorizing an "automatic search of an arrestee's companion" following the stop of the arrestee's vehicle to be contrary to the totality-of-circumstances analysis mandated for warrantless searches. 843 N.W.2d at 232-33. But appellant was not merely an arrestee's

companion. He was one of the two occupants in the vehicle who could be the person seen shooting up.

Based on the totality of the circumstances, Lynch had a reasonable, articulable suspicion that appellant might be engaged in criminal activity and reasonably believed that appellant might be armed and dangerous. The district court did not err by denying appellant's motion to suppress the evidence obtained during the pat search.

**Affirmed.**