*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A24-1955**

State of Minnesota,
Respondent,

vs.

Michael Patrick Daly,
Appellant.

**Filed January 5, 2026**
**Affirmed**
**Bond, Judge**

Crow Wing County District Court
File No. 18-CR-22-4701

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kelsey Hopps, Crow Wing County Attorney, Lindsey S. Lindstrom, Assistant County Attorney, Brainerd, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Larson, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**BOND**, Judge

Appellant challenges his convictions for fifth-degree drug possession and obstruction of legal process, arguing that the district court erred by denying his motion to

suppress evidence because police unlawfully expanded the scope of the traffic stop and searched his vehicle without probable cause. We affirm.

**FACTS**

In December 2022, respondent State of Minnesota charged appellant Michael Patrick Daly with fifth-degree controlled-substance possession in violation of Minn. Stat. § 152.025, subd. 2(1) (2022); obstruction of legal process in violation of Minn. Stat. § 609.50, subd. 1(2) (2022); possession of marijuana in a motor vehicle in violation of Minn. Stat. § 152.027, subd. 3 (2022); and speeding in violation of Minn. Stat. § 169.14, subd. 2(a)(3) (2022). The charges stemmed from evidence found on Daly's person and in his vehicle after police stopped Daly's vehicle for speeding.

Representing himself, Daly moved to suppress the evidence on the grounds that police expanded the traffic stop into a drug investigation without reasonable, articulable suspicion and the smell of marijuana alone does not amount to probable cause justifying the warrantless search of his vehicle. At a contested omnibus hearing, the state called the police officer who conducted the traffic stop and introduced footage from the officer's body-worn camera and squad-car camera. The following uncontested facts were established at the hearing.

At around 2:10 p.m. on December 26, 2022, a Crosslake police sergeant on routine patrol observed a vehicle traveling at around 65 miles per hour in a 55-mile-per-hour zone. After the sergeant began to follow the vehicle but before he activated the squad car's emergency lights, the vehicle pulled over to the side of the road. As the sergeant approached the vehicle, the driver extended his arm out of the open driver's side window

to hand the sergeant his driver's license and insurance information. The sergeant identified the driver as Daly, with whom he was already familiar because, nine or ten months before the traffic stop, the sergeant helped execute a search warrant at Daly's home based on Daly's suspected "involve[ment] with illegal drug sales." During the search, police found "quite a bit of stuff in the house that related to drug paraphernalia and some drugs."

After verifying Daly's driver's license and insurance information, the sergeant asked Daly to step out of the vehicle. Daly asked why, and the sergeant told Daly that he was going to search the vehicle because he smelled marijuana. At the omnibus hearing, the sergeant, who had been in law enforcement for 18 years and was familiar with the smell of marijuana, testified that he detected an "overwhelming smell" of marijuana coming from the vehicle; in the sergeant's experience, the smell was consistent with a "large[] amount[]" of "fresh" marijuana in a vehicle and inconsistent with a small amount.

Daly refused to exit his vehicle, telling the sergeant that there was no reasonable, articulable suspicion. The sergeant told Daly that there was probable cause to search the vehicle and that, if Daly did not comply with his instructions, Daly would go to jail for obstruction. Daly continued to refuse the sergeant's commands. After calling for backup, the sergeant repeatedly ordered Daly to exit the vehicle and warned him that, if he did not cooperate and exit the vehicle, "it's going to go a completely different way. Alright?" Daly responded, "It's going to go completely a different way." While they waited for backup, Daly continued to argue about the legal basis for the sergeant's commands and continued to refuse the sergeant's instructions to step out of the car.

Two additional police officers arrived and the sergeant once again asked Daly to exit the vehicle. Daly again refused to comply, even after the sergeant warned him that he could get maced. The sergeant decided they could remove Daly without resorting to mace, and he directed the other two officers to hold Daly's arms. When the sergeant reached across Daly to unbuckle Daly's seatbelt, Daly pulled back. The officers physically removed Daly from the vehicle and placed him on the ground. As the officers tried to maneuver Daly's arms behind his back to handcuff him, Daly physically resisted by tensing and pulling back his arms. Daly continued to physically resist the officers, even after he was standing upright in handcuffs and the sergeant placed him under arrest for obstruction of legal process.

After placing Daly under arrest, the officers searched Daly's person and discovered marijuana and methamphetamine in his jacket pocket. The sergeant testified that officers then searched the vehicle as a "[s]earch incident to arrest, and then also having the other drugs led us to search the vehicle, plus it was being impounded so we would do an inventory search anyhow." The officers recovered additional marijuana in the console of Daly's vehicle.

The district court denied Daly's motion to suppress, determining that the sergeant had reasonable suspicion to expand the traffic stop to investigate the smell of marijuana and probable cause to arrest Daly for obstruction of legal process. The district court reasoned that, because there was probable cause to arrest Daly, the search of his person was a lawful search incident to arrest. The district court further noted that, while there was reasonable, articulable suspicion to expand the traffic stop, "any argument that the officer

4

wrongfully expanded the traffic stop was mooted by Defendant's subsequent obstruction" under *State v. Ingram*, 570 N.W.2d. 173, 178 (Minn. App. 1997), *rev. denied* (Minn. Dec. 22, 1997).

The state dismissed the charge relating to possession of the marijuana in the motor vehicle and the case proceeded to a jury trial on the remaining three counts. The jury found Daly guilty. The district court sentenced Daly to 17 months stayed for five years for fifth-degree drug possession and 90 days in jail stayed for one year for obstruction of legal process.

Daly appeals.

**DECISION**

Daly challenges the district court's denial of his motion to suppress evidence. In considering a challenge to a district court's ruling on a motion to suppress evidence, we review factual findings for clear error and legal determinations de novo. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011). If the facts are not in dispute, appellate courts review whether an officer had reasonable, articulable suspicion de novo. *State v. Lugo*, 887 N.W.2d 476, 487 (Minn. 2016).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Warrantless searches and seizures are unreasonable under both the federal and state constitutions unless a recognized warrant exception applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009). Evidence obtained in violation of the federal or state constitution must be suppressed. *Diede*, 795 N.W.2d at

5

842; *see also State v. Babineau*, 23 N.W.3d 396, 410 (Minn. App. 2025) ("Generally, evidence obtained through an unlawful expansion of the scope of a vehicle stop must be suppressed.").

At the outset, we note that Daly's argument focuses on law enforcement's alleged "unconstitutional[] search[] [of his] pickup," and his contention that "the marijuana and methamphetamine law enforcement found were the fruit of that illegal conduct." Evidence obtained through illegal police conduct is considered "the fruit of the poisonous tree" and may not be admitted unless the state proves the evidence was obtained "by means sufficiently distinguishable to be purged of the primary taint." *State v. Olson*, 634 N.W.2d 224, 229 (Minn. App. 2001) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)), *rev. denied* (Minn. Dec. 11, 2001). Specifically, Daly argues that all the drug evidence should have been suppressed because the smell of marijuana alone did not give the sergeant probable cause to search Daly's vehicle under the automobile exception to the warrant requirement. *State v. Barrow*, 989 N.W.2d 682, 685 (Minn. 2023) (explaining that, under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle, including closed containers in that vehicle, "if there is probable cause to believe the search will result in a discovery of evidence or contraband" (quotation omitted)); *see also State v. Torgerson*, 995 N.W.2d 164, 174-75 (Minn. 2023) (holding that the odor of marijuana, without more, is insufficient to establish probable cause to search a vehicle under the automobile exception to the warrant requirement).

As the district court determined, however, the undisputed evidence from the contested omnibus hearing establishes that Daly's vehicle was searched only *after* the

6

police arrested Daly for obstructing legal process and discovered marijuana and methamphetamine on his person pursuant to a search incident to a lawful arrest. *See State v. Bradley*, 908 N.W.2d 366, 369 (Minn. App. 2018) (explaining that search incident to arrest is a recognized exception to the warrant requirement which allows an officer who had lawfully arrested a person to search the arrestee's person and "the area within the arrestee's immediate control"). Thus, the record does not support Daly's contentions the police searched his vehicle based on the smell of marijuana alone or that the discovery of the marijuana and methamphetamine on his person resulted from the search of the vehicle. Further, because the state dismissed the charge relating to possession of the marijuana in the motor vehicle before trial, Daly was not convicted of any crimes related to the evidence found in his vehicle. We thus focus our analysis on whether the police had reasonable, articulable suspicion to expand the traffic stop for speeding into a drug investigation and whether the methamphetamine found on Daly's person—the evidence that the state used to convict him of fifth-degree possession of a controlled substance—should have been suppressed as fruit of unlawful police conduct.[1]

I. **The district court did not err in determining that the sergeant had reasonable, articulable suspicion of criminal activity to expand the scope of the traffic stop.**

One exception to the warrant requirement allows a police officer to "conduct a brief, investigatory stop of a motor vehicle when the officer has a reasonable, articulable

---

[1] In the conclusion section of his brief, Daly asserts that his convictions for both fifth-degree possession of a controlled substance and obstructing legal process must be reversed. But in the district court and on appeal, the only evidence that Daly argues was the fruit of the poisonous tree is the drug evidence.

7

suspicion that criminal activity is afoot." *State v. Taylor*, 965 N.W.2d 747, 752 (Minn. 2021) (quotation omitted). "Reasonable suspicion must be 'particularized' and based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). "The reasonable suspicion standard is not high," but it requires more than an unarticulated "hunch." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quotations omitted). In determining whether reasonable suspicion exists, courts "consider the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001).

"An initially valid stop may become invalid if it becomes intolerable in its "intensity or scope.'" *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004) (quoting *Terry*, 392 U.S. at 17-18). Accordingly, under the Minnesota Constitution, "each incremental intrusion during a traffic stop [must] be tied to and justified by one of the following: (1) the original legitimate purpose of the stop, (2) independent probable cause, or (3) reasonableness, as defined in *Terry*." *Id.* at 365; *see also State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012) (stating that an expansion of the scope of a stop "not strictly tied to the circumstances that rendered the initiation of the stop permissible must be supported by at least a reasonable suspicion of additional illegal activity"). The state bears the burden to prove that an investigatory stop was "sufficiently limited" in scope and duration. *Babineau*, 23 N.W.3d at 405.

Daly does not dispute that, because he was speeding, the traffic stop was justified at its inception. *See State v. George*, 557 N.W.2d 575, 578 (Minn. 1997) ("Ordinarily, if an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle."). And the state does not appear to dispute that, by asking Daly to exit the vehicle so he could investigate the smell of marijuana in Daly's vehicle, the sergeant expanded the scope of the traffic stop. *See Babineau*, 23 N.W.3d at 406 (concluding that, because the original purpose of the stop was an equipment violation, the officer's "decision to reapproach the vehicle to investigate the odor of marijuana constituted an expansion of the scope of the stop requiring reasonable suspicion of additional criminal activity"). We therefore consider the parties' central dispute: whether there was reasonable, articulable suspicion of criminal activity justifying the sergeant's expansion of the traffic stop by asking Daly to exit the vehicle to investigate the smell of marijuana. *See Smith*, 814 N.W.2d at 350; *Askerooth*, 681 N.W.2d at 364.

In his testimony, the sergeant identified two factors that caused him to expand the traffic stop into a drug investigation. First, the sergeant, a law-enforcement veteran of 18 years who was familiar with the smell of marijuana, testified that there was an overwhelming odor of marijuana coming from inside Daly's vehicle. The sergeant explained that, while small amounts of marijuana have only a "faint odor," the odor in Daly's vehicle was consistent with a "large[] amount[]" of fresh marijuana in the vehicle. Second, the sergeant testified that he was familiar with Daly because "earlier that year . . . February or March . . . [the sergeant] was involved with a search warrant at [Daly's] residence." The search was conducted by two drug taskforce teams, and while the sergeant

9

did not "know exactly everything that was located," he knew the search was conducted because Daly was believed "to be involved with illegal drug sales." The sergeant testified that "during the search we did find quite a bit of stuff in the house that related to drug paraphernalia and some drugs."

Establishing reasonable suspicion is a "low hurdle." *Taylor*, 965 N.W.2d at 757. "Reasonable suspicion requires more than a mere hunch but is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Id.* at 752 (quotation omitted). And we are mindful that, in determining whether reasonable suspicion exists, a trained police officer may "make inferences and deductions that would be beyond the competence of an untrained person." *Richardson*, 622 N.W.2d at 825.

Here, the sergeant, a highly experienced police officer who was familiar with marijuana and had conducted "hundreds . . . if not, thousands" of traffic stops, determined that the overwhelming smell of marijuana was indicative of a large amount of fresh marijuana and had previously participated in a warranted search of Daly's home by two drug taskforce teams that yielded drugs and drug paraphernalia. We recognize that the search warrant was executed nine or ten months before the traffic stop, but we must "consider the totality of the circumstances" in assessing whether reasonable, articulable suspicion existed. *Id.* We conclude that, based on the totality of these circumstances, the sergeant had reasonable, articulable suspicion to justify expanding the traffic stop to investigate illegal drug possession.

Relying on *Babineau*, Daly argues that the smell of marijuana alone is insufficient for reasonable, articulable suspicion. In *Babineau*, during an equipment-violation traffic stop, an officer in training told his training officer that he thought he smelled marijuana. 23 N.W.3d at 403. The trainer then reapproached the vehicle, told the driver to exit the vehicle, and inquired about the odor of marijuana. *Id.* We held that "the odor of marijuana emanating from a vehicle does not, on its own, provide reasonable, articulable suspicion of criminal activity sufficient to expand the scope of an equipment-violation vehicle stop" if the stop occurred before Minnesota's marijuana laws changed on August 1, 2023. *Id.* at 408.

We agree with Daly that, as in *Babineau*, at the time of the traffic stop in this case, possession of marijuana was "not always a crime." *Id.* at 407 (quoting *Torgerson*, 995 N.W.2d at 170). But we disagree that *Babineau* controls the outcome here. Unlike *Babineau*, the odor of marijuana emanating from Daly's vehicle was "overwhelming" and the sergeant was unequivocal in his opinion that the smell was indicative of a large amount of fresh marijuana. And in *Babineau*, the officer did not articulate any "other basis to support a reasonable suspicion that the odor he detected indicated the presence of criminal quantities of marijuana." *Id.* at 409. Here, the sergeant identified a second basis to support his reasonable suspicion that Daly possessed criminal amounts of marijuana—the prior search warrant at Daly's home that resulted in the discovery of drugs and drug paraphernalia. Accordingly, Daly's reliance on *Babineau* is unavailing.

Daly argues that there was no reasonable, articulable suspicion because the sergeant did not specify what kind of drugs were found at Daly's home during the prior search or

11

whether Daly was arrested. *See Lugo*, 887 N.W.2d at 487 (stating that "[a]rrests not resulting in conviction may be considered [to establish a reasonable, articulable suspicion] when the arrest was for an offense of the same general nature"). While it is true that the sergeant did not provide such details, Daly does not identify caselaw—nor are we aware of any—that prohibits consideration of a defendant's past association with drug activity as part of the reasonable-suspicion analysis in the absence of an arrest. *See id.* ("Presence in a known drug house is a relevant, but not conclusive, factor" in reasonable-suspicion analysis); *State v. Lemert*, 843 N.W.2d 227, 232 (Minn. 2014) (concluding officer's knowledge of defendant's ties to drug-trafficking activities provided reasonable suspicion that defendant was armed and dangerous). And, in determining whether reasonable suspicion existed, we focus on the totality of the circumstances and do not consider "each fact separately." *Taylor*, 965 N.W.2d at 754.

We conclude that the district court did not err in determining that the sergeant had reasonable, articulable suspicion to expand the scope of the initial traffic stop into a drug investigation.

II. **The district court did not err in determining that the sergeant discovered the methamphetamine on Daly's person pursuant to a lawful search incident to arrest.**

The district court determined that, because the sergeant had reasonable suspicion to expand the traffic stop to investigate the smell of marijuana, Daly's refusal to comply with the sergeant's commands to exit the vehicle and his subsequent physical resistance provided probable cause to arrest Daly for obstruction of legal process. Consequently, the

12

search of Daly's person that led to the discovery of the methamphetamine was a lawful search incident to arrest. We agree.

The sergeant stopped Daly's vehicle for speeding, justifying the traffic stop at its inception, as Daly agrees. For the reasons already explained, the sergeant then permissibly expanded the scope of the traffic stop based on reasonable, articulable suspicion that Daly's vehicle contained an illegal amount of marijuana. Before telling Daly that he intended to search the vehicle, the sergeant asked Daly to step out of the vehicle. "[A] police officer may order a driver out of a lawfully stopped vehicle without an articulated reason." *Askerooth*, 681 N.W.2d at 367 (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (holding "that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures"). Daly repeatedly refused and was eventually arrested for obstruction of legal process.

In determining that the officers had probable cause to arrest Daly for obstruction of legal process, the district court found

> [Daly's] seat belt was unbuckled, two officers grabbed [Daly] by the arms, and tried to remove [Daly] from the vehicle. [Daly] continued to resist but was not violent. It took two officers to remove [Daly] and [they] placed him on the ground while he continued to resist. [Daly] tensed up and refused to put his arms behind his back. It took all three officers to get the handcuffs on [Daly]. [Daly] continued to struggle with the officers after being brought to his feet.

On appeal, Daly does not argue that the officers lacked probable cause to arrest him for obstruction of legal process. *See* Minn. Stat. § 609.50, subd. 1(2) (providing that a

13

person is guilty of obstructing legal process if he or she intentionally "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties"); *State v. Krawsky*, 426 N.W.2d 875, 877 (Minn. 1988) (stating that the language of the obstruction-of-legal-process "statute is directed solely at physical acts" and "forbids intentional physical obstruction or interference with a police officer in the performance of his official duties").[2] Once he was placed under arrest, the officers searched Daly's person as a search incident to arrest, conduct that Daly likewise does not challenge. *See Bradley*, 908 N.W.2d at 369.

In sum, the record establishes that the sergeant lawfully asked Daly to exit the vehicle, a request Daly repeatedly refused. When Daly later physically resisted the officers, the officers had probable cause to arrest him for obstruction of legal process and,

---

[2] On this point, Daly maintains that his conduct was not an intervening circumstance "sufficient to purge the primary taint of [the sergeant's] illegal conduct." *See State v. Engel*, 18 N.W.3d 540, 550 (Minn. App. 2025), *rev. granted* (Minn. June 17, 2025) (recognizing "that evidence of a defendant committing a new crime in response to unconstitutional police conduct—such as fleeing police, resisting arrest, or assaulting a police officer—constitutes intervening circumstances that purge the subsequent conduct from the taint of the unlawful seizure"). Because the sergeant did not act illegally by expanding the scope of the traffic stop, we need not engage in a taint analysis. We observe, however, that "[a] defendant may not resort to self-help to resolve disputes concerning unreasonable searches and seizes, because the legal safeguards under the Fourth, Fifth, Sixth, and Fourteenth Amendments provide the victim of an unlawful search with realistic and orderly legal alternatives to physical resistance." *Ingram*, 570 N.W.2d at 178 (quotations omitted). We further observe that, while Daly relies on *State v. Morin* to argue that his conduct did not constitute obstruction for purposes of a taint analysis, the defendant in *Morin* "did not direct any physical activity at the responding officers that could have obstructed their investigation and did not say anything to them." 736 N.W.2d 691, 698 (Minn. App. 2007), *rev. denied* (Minn. Sept. 18, 2007). Daly engaged in physical conduct directed at the officers to prevent them from removing him from the vehicle and handcuffing him.

in performing a search of Daly's person incident to his lawful arrest, they discovered methamphetamine. The district court did not err in denying Daly's motion to suppress.

**Affirmed.**